**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **IDA GONZALEZ,** | ) | NO. EDCV 04-00302-MAN |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff filed a Complaint on March 16, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). On April 16, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on January 18, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding for the payment of benefits or, alternatively, a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on February 1, 2002. (Administrative Record ("A.R.") 54-59.) Plaintiff claims to have been disabled since April 28, 2000, due to headaches, depression, anxiety, and bladder and bowel problems. (A.R. 15, 54.) Plaintiff has past relevant experience as a construction documents control manager. (A.R. 15.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On May 20, 2003, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Robert Rogers ("ALJ"). (A.R. 202-19.) In a June 27, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 14-22, 4-6.)

### SUMMARY OF ADMINISTRATIVE DECISION

In his June 27, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 21.) He found that Plaintiff is an individual "closely approaching retirement age" pursuant to 20 C.F.R. § 404.1563, and has a "limited education" pursuant to 20 C.F.R. § 404.1564. (A.R. 22.) He found that Plaintiff has "severe" impairments, consisting of anxiety and depression, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in

1  Appendix 1, Subpart P, Regulations No. 4.  (A.R. 16, 21.)

2

3      The ALJ found that Plaintiff had the following residual functional

4  capacity:  "[s]he has no impairment based exertional limits on her

5  ability to perform work.  She cannot work with the general public or in

6  large crowds, although she can work around othe[r] people.  She requires

7  a relatively low stress job." (A.R. 22.)  He found that "[Plaintiff's]

8  allegations regarding her limitations are not totally credible for the

9  reasons set forth in the body of the decision." (A.R. 21.)

10

11      The ALJ also found that Plaintiff has a semi-skilled work

12  background, but that Plaintiff is unable to perform her past relevant

13  work. (A.R. 22.)  Based upon the testimony of the vocational expert and

14  using Rule 204.00 of the Medical Vocational Guidelines (the "Grids") as

15  a framework, the ALJ found that Plaintiff could perform a significant

16  number of jobs in the national economy, such as a janitor/cleaner/maid/

17  housekeeper and assembler/hand packer/sorter/grader, as identified by

18  the vocational expert.[1]  (*Id.*)  Thus, the ALJ concluded that Plaintiff

19

20          [1]     Rule 204.00 provides:

21          *Maximum sustained work capability limited to heavy work (or*
            *very heavy work) as a result of severe medically determinable*
22          *impairment(s).*  The residual functional capacity to perform
            heavy work or very heavy work includes the functional
23          capability for work at the lesser functional levels as well,
            and represents substantial work capability for jobs in the
24          national economy at all skill and physical demand levels.
            Individuals who retain the functional capacity to perform
25          heavy work (or very heavy work) ordinarily will not have a
            severe impairment or will be able to do their past
26          work--either of which would have already provided a basis for
            a decision of "not disabled". Environmental restrictions
27          ordinarily would not significantly affect the range of work
            existing in the national economy for individuals with the

28
                                       3

1  was not disabled.  (*Id.*)

2

3                                **STANDARD OF REVIEW**

4

5       This Court reviews the Commissioner's decision to determine
6  whether it is free from legal error and supported by substantial
7  evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
8  Commissioner's decision must stand if it is supported by substantial
9  evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>,
10 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
11 mere scintilla but less than a preponderance -- it is such relevant
12 evidence that a reasonable mind might accept as adequate to support the
13 conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

14

15      Although this Court cannot substitute its discretion for that of
16 the Commissioner, this Court nonetheless must review the record as a
17 whole, "weighing both the evidence that supports and the evidence that
18 detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Secretary</u>
19 <u>of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
20 <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
21 responsible for determining credibility, resolving conflicts in medical
22 testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d

23 _____

24          physical capability for heavy work (or very heavy work). Thus
            an impairment which does not preclude heavy work (or very
25          heavy work) would not ordinarily be the primary reason for
            unemployment, and generally is sufficient for a finding of not
26          disabled, even though age, education, and skill level of prior
            work experience may be considered adverse.
27
   20 C.F.R. Pt. 220, App. 2.
28
                                     4

1035, 1039-40 (9th Cir. 1995).   This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues.  First, Plaintiff contends that the ALJ failed to properly consider all of the available medical evidence of record, namely, to consider the effect of her obesity on her ability to perform exertional activities.  Plaintiff complains that the ALJ erred in relying on the opinion of an examining physician, who imposed no exertional imitations, rather than on the opinion of a non-examining state agency physician, who limited Plaintiff to performing "light" work.[2]  Second, Plaintiff contends that the ALJ improperly assessed Plaintiff's credibility.  (Joint Stip. at 4.)

///
///
///
///
///

---

[2]   "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

**A.   The ALJ Properly Declined To Incorporate The Limitations Found By A Non-Examining Physician Into His Residual Functional Capacity Finding.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p.  The opinions of other physicians -- examining physicians and non-examining medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); Andrews, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").  However, the opinion of a non-examining physician, with nothing more, does not constitute substantial evidence.  Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990).

Here, the ALJ described the evidence upon which he based his findings regarding Plaintiff's physical limitations:

[Plaintiff] underwent examination by internist, Mansurur Khan, M.D., in March 2002. Dr. Khan reported a chief complaint of anxiety which [Plaintiff] went on to describe as a daily occurrence of panic attacks over the last 30 years. [Plaintiff] reported that she had learned to identify when symptoms were occurring and how to deal with them through stress management classes. She reported that she had never been hospitalized nor was she subject to suicidal ideation or suicidal attempts. She reported that she had been able to perform all of her job duties as a document control manager despite her problems with anxiety. Dr. Khan reported a weight of 234 pounds on a 5'6" frame. Objective findings, other than obesity, were not reported during physical examination. Dr. Khan assessed that [Plaintiff] was expected to lift/carry without restriction; walk/stand for eight hours in an eight-hour day with normal breaks; and sit for eight hours in an hour-hour day with normal breaks without restriction. Dr. Khan imposed no other limitations (Ex. 5F). As Dr. Khan's opinion is supported by objective findings and is consistent with the body of evidence, the undersigned assigns it significant weight.

The State Agency medical consultants issued medical source statements regarding [Plaintiff's] ability to perform work-related activities (Ex. 13F). The medical consultants reported that [Plaintiff] is capable of light work activity which involves occasional climbing and balancing. They

7

further assessed that [Plaintiff's] mild anxiety and depression posed only slight limitations and difficulty in the areas of daily living activities, social functioning and concentration, persistence or pace and, thus, were non-severe in nature.  The Administrative Law Judge notes that although these are non-examining physicians under Social Security Ruling 96-6p, their opinions are entitled to consideration in conjunction with all the other evidence.  Noting consistency with the record as a whole, the Administrative Law Judge accords their opinions great weight in determining [Plaintiff's] residual functional capacity.

(A.R. 18.)  Based upon the ALJ's evaluation of the record, he found that Plaintiff "has no impairment based exertional limits on her ability to perform work."  (A.R. 17.)

On March 30, 2002, Dr. Khan, who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with "probable anxiety disorder," but deferred the evaluation of such disorder to be determined by a psychological or psychiatric consultative examination, and found that Plaintiff "could be expected to lift and carry without restrictions."  (A.R. 156-57.)  In addition, he found that Plaintiff has no walking and standing, sitting, postural, manipulative, or environmental limitations, and that Plaintiff requires no assistive device.  (A.R. 157.)  He noted Plaintiff's weight (234 pounds) and blood pressure (150/90) (A.R. 155), but suggested no restrictions in light of them.

The record also contains an August 8, 2002 Physical Residual Functional Capacity Assessment, completed by a state agency physician who did not examine Plaintiff and whose signature is illegible (A.R. 187-94), finding that Plaintiff was limited to "light" work, could stand, sit, and walk for about six hours in an eight-hour workday, could "occasionally" climb and balance, has "limited" near and far visual acuity, and should avoid exposure to heights. (A.R. 188-90.) This state agency physician noted Dr. Khan's report and its indication of an "unlimited" capacity to perform work, but disagreed with that conclusion, noting that it "does not factor in 1) obesity [and] 2) [high] blood pressure." (A.R. 193.)

Plaintiff contends that the ALJ erred in relying on the opinion of examining physician Dr. Khan, rather than on the above-described opinion of the non-examining State Agency physician, and that by doing so, the ALJ failed to account for the effects of Plaintiff's obesity. In particular, Plaintiff contends that the opinion of Commissioner's medical expert represents an "overall view of this Plaintiff's medical conditions considering all of her impairments," including her limitations based on her obesity and high blood pressure. (Joint Stip. at 4.) Plaintiff observes that the ALJ stated that he found the state agency physician's opinion to be "consistent with the record as a whole," and therefore, the ALJ's failure to provide a reason for his rejection of this physician's opinion that Plaintiff is limited to "light" work was error. (Joint Stip. at 4-5.)

1    Plaintiff's interpretation of the ALJ's comment and Plaintiff's
2    assumption that Dr. Khan failed to consider Plaintiff's obesity and/or
3    blood pressure are unpersuasive.   Moreover, Plaintiff herself fails to
4    consider "the record as a whole" by ignoring her own testimony on this
5    issue.

6

7    Contrary to Plaintiff's contentions, Dr. Khan did make note of both
8    Plaintiff's obesity and her high blood pressure as a part of his
9    examination of her.   (A.R. 155 - noting Plaintiff's blood pressure as
10   "150/90" and her height and weight as "66-1/2'; 234 lb," and
11   characterizing her abdomen as "obese.")   As a part of that same
12   examination, he noted a number of other of Plaintiff's physical
13   characteristics, including, *inter alia*, her chest and lung sounds, heart
14   rate and rhythm, pulse, coordination, gait, muscle tone and motor
15   strength, and range of motion.   (A.R. 155-56.)   There is no reasonable
16   basis for concluding that, while Dr. Khan considered these physical
17   characteristics in assessing Plaintiff's exertional status, he excluded
18   from his consideration the obesity and high blood pressure he also had
19   observed.

20

21   The ALJ's comment, on which Plaintiff relies, does not warrant
22   finding error.   After noting the state agency physician's finding that
23   Plaintiff is capable of performing "light" work with occasional climbing
24   and balancing, and the physician's findings as to Plaintiff's non-
25   exertional mental limitations, the ALJ concluded that he would accord
26   the opinion "great weight," because there was a "consistency with the
27   record as a whole." (A.R. 18.)   The state agency physician's opinion as

28
                                  10

to Plaintiff's mental limitations -- an issue on which Dr. Khan did not opine -- was consistent with the record, and the ALJ adopted them.  The state agency physician's opinion as to Plaintiff's physical residual capacity also was consistent with the record to the extent that it reflected the conclusion that Plaintiff could perform work-related activities.  However, that opinion did conflict with Dr. Khan's opinion as to Plaintiff's physical residual capacity.

Plaintiff incorrectly asserts that the state agency physician's conclusion that Plaintiff's obesity and high blood pressure warranted imposing exertional limitations is consistent with the record.  While the records of Plaintiff's treating physicians note, *inter alia*, Plaintiff's hypertension and obesity, *none* of Plaintiff's treating physicians suggest, or even hint at the possibility of, any restrictions caused by these conditions.[3]  Rather, the records of Plaintiff's treating doctors principally reflect her treatment for depression, anxiety, and related symptoms, as well as Plaintiff's miscellaneous short-term physical health issues wholly unrelated to obesity or hypertension.[4]

---

[3] *See, e.g.*, A.R. 138 (July 22, 1997 progress notes reflecting obesity); A.R. 140 (November 6, 1996 progress notes diagnosing obesity); A.R. 144 (February 28, 2001 progress notes diagnosing hypertension and obesity); A.R. 146 (November 30, 2001 progress notes reflecting hypertension); A.R. 197 (August 16, 2002 -- progress notes reflecting that Plaintiff's hypertension was "under control").

The records from Plaintiff's treating physicians also note Plaintiff's depression, anxiety, and related symptoms.  However, Plaintiff does not dispute the ALJ's findings regarding her mental residual functional capacity finding.  (Joint Stip. at 5.)

[4] *See, e.g.*, A.R. 111 (March 5, 2002 progress notes re: "yeast infection" and "extensive genital warts"); A.R. 121 (December 8, 1999 treatment notes re: left eye lid swelling, tearing, and pain and diagnosing conjunctivitis); A.R. 132 (January 14, 1999 progress notes

11

In short, Dr. Khan's implicit finding that Plaintiff's hypertension and obesity did not warrant imposing exertional limitations was consistent with the record.   The state agency physician, however, concluded otherwise.   Thus, a conflict existed.   The ALJ is responsible for resolving conflicts in the medical evidence.   <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57 (9th Cir. 2002); <u>Andrews</u>, 53 F.3d at 1039-40.   The ALJ's resolution of that conflict in favor of adopting Dr. Khan's opinion was entirely reasonable based on the record before him.

First, unlike the state agency physician, Dr. Khan actually examined Plaintiff, and based his opinion on the results of his examination.   It is an oft-repeated principle in this Circuit that, generally, an "examining physician's opinion carries more weight that a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001).   *See also* <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(d)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Relatedly, the general rule is that opinions that are explained should be accorded more weight than those that are not.   <u>Holohan</u>, 246 F.3d at 1202; *see also* 20 C.F.R. § 404.1527(d)(3).   Dr. Khan's opinion

re: a rash and hives for three weeks); A.R. 134 (June 25, 1998 progress notes re: auto accident and swollen, painful right ankle); A.R. 135 (June 3, 1998 progress notes re: cervical sprain and low back pain following an auto accident); A.R. 175 (May 21, 2002 re: genital lesions); A.R. 176 (March 7, 2002 progress notes re: (vaginal itching and lesions).

sets forth his clinical observations as to Plaintiff's physical status in pertinent respects.   In contrast, the state agency physician's opinion consists of a check-the-box form, with only brief and largely illegible handwritten notes on the concluding page.   Critically, those notes do not explain why the state agency physician believed that Plaintiff's obesity and high blood pressure resulted in the additional limitations justifying a finding of "light" work.   "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d at 957; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(same).

Moreover, the non-examining state agency physician's findings regarding Plaintiff's physical limitations are at odds with Plaintiff's own testimony at the May 20, 2003 hearing.   When she was questioned by the ALJ, "Do you have anything physically that would keep you from working?  Any physical problems at all?," Plaintiff responded, "No." (A.R. 207.)   Additionally, while Plaintiff first testified that her hypertension is "not under control," she immediately corrected herself and stated, "[w]ell, with the medication I'm doing okay."  (A.R. 211.)

Arguably, it would have been error for the ALJ to reject Dr. Khan's opinion in favor of that of the non-examining state agency physician. See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984)(non-examining, non-treating physician's report should be discounted and is not substantial evidence when all other evidence in the record contradicts it).   But, even if, instead, this is an instance in which

13

the record could be said to support two rational interpretations with respect to Plaintiff's exertional status, the Court must follow the well-established rule that the Commissioner's decision to elect one of those rational interpretations must be followed, because that election was free from legal error, for the reasons set forth above. Accordingly, Plaintiff's first issue does not warrant reversal.[5]

**B.    The ALJ Properly Rejected Plaintiff's Credibility.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to her subjective symptoms merely because they are not corroborated by objective evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1147-48 (9th Cir. 2001); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1985). As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked
> credibility is a permissible basis to reject excess pain
> testimony. But, because a claimant need not present clinical
> or diagnostic evidence to support the severity of his pain,
> *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)
> (stating that "it is the very nature of excess pain to be out
> of proportion to the medical evidence"), a finding that the

---

[5]    For the same reasons set froth above, Plaintiff's argument that the ALJ erred in failing to apply Rules 201.02 or 202.02 of the Grids, which are based on a "light" work exertional limitation and direct a finding of disability, is without merit.

1  claimant lacks credibility cannot be premised wholly on a lack

2  of medical support for the severity of his pain.

3

4  <u>Light v. Social Security Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).

5  This rule is based on the recognition that pain is an inherently

6  subjective phenomenon, which cannot be objectively verified or measured

7  and varies significantly among individuals.  <u>Bunnell</u>, 947 F.2d at 347.

8

9      Unless the evidence suggests affirmatively that a claimant is

10  malingering, the ALJ must provide clear and convincing reasons for

11  rejecting the claimant's excess pain or symptom testimony, such as

12  conflicts between the claimant's testimony and conduct, or internal

13  contradictions in the claimant's testimony.  <u>Dodrill v. Shalala</u>, 12 F.3d

14  915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792.   In determining

15  whether a claimant's testimony regarding the severity of his symptoms is

16  credible, the ALJ may consider:  "(1) ordinary techniques of credibility

17  evaluation, such as the claimant's reputation for lying, prior

18  inconsistent statements concerning the symptoms, and other testimony by

19  the claimant that appears less than candid; (2) unexplained or

20  inadequately explained failure to seek treatment or to follow a

21  prescribed course of treatment; and (3) the claimant's daily

22  activities."  <u>Smolen</u>, 80 F.3d at 1284.

23

24      The Court will give great weight to the ALJ's credibility

25  assessment.  <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990);

26  <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that

27  the ALJ's credibility determination is to be given great weight when

28

supported specifically).  However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Oreteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.")  When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible.  *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688 (9th Cir. 1979); *see also* <u>Lester</u>, 81 F.3d at 834 (an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

In rejecting Plaintiff's claimed symptoms, the ALJ stated:

The first area of consideration involves [Plaintiff's] activities of daily living. [Plaintiff] reported to Linda Smith, M.D., psychiatrist, that she is able to do household chores, yard work, cook, dress and bathe herself, go to the store, drive a car, walk her dog, handle her bills and cash, watch[] TV, use a computer and run errands (Ex. 4F).  In a Daily Activities Questionnaire, [Plaintiff] reported that, on an average day, she does routine household chores, walks the dog, watches TV, plays games on the computer and goes grocery shopping if needed.  She reported that she needs no help with

her personal needs, cooks her meals, lives alone, dusts, vacuums, does laundry, does dishes, makes the bed, uses a computer, plays the organ and watches TV more than she reads or listens to the radio (Ex. 4E). Thus, it is concluded that she has mild restriction in activities of daily living.

[Plaintiff's] social functioning must also be considered. Dr. Smith reported that [Plaintiff] believes that she gets along in an excellent manner with other people. However, she has had panic attacks for 30 years and must use behavior modification techniques to cope with her feelings. She stated that she is able to go to grocery stores now, but still avoids driving alone on the freeway (Ex. 4F). [Plaintiff] stated in Ex. 4E that, as far as she can remember, she has hesitated to socialize much, but that she plans on finding a local church to join. She reported that she retrieves her mail daily; grocery shops once or twice a week; walks her dog; gets together three times a week with family for coffee and to talk; talks daily on the phone to her middle daughter; and considers playing computer games to be her main hobby. [Plaintiff] reported to internist, Mansurur Khan, M.D., that she must cope with panic attacks or anxiety on a daily basis. She stated that she does breathing exercises to help control her symptoms (Ex. 5F). It is concluded that [Plaintiff] has moderate limitation in maintaining social functioning.

[Plaintiff's] ability to maintain concentration, persistence,

and pace must also be considered. [Plaintiff] reported to Dr. Smith that she gets depressed several times during the week. She noted that when that happens she must rest and not deal with other people. She stated that she generally feels better as the day goes on. She reported no troubles with memory and concentration. In Ex. 4E, [Plaintiff] reported that she feels impatient and likes to finish things as soon as she starts them. She noted that she feels tense whenever she ha to leave familiar surroundings. She reported no problems with concentration beyond the normal ones associated with aging. Dr. Khan reported daily episodes of muscle tension, stiffness, increased heart rate, feelings of shortness of breath and feelings of depression which [Plaintiff] tries to control through stress management techniques (Ex. 5F). It is concluded that [Plaintiff] has moderate limitations in maintaining concentration, persistence, or pace.

The record does not provide any evidence of repeated episodes of decompensation or deterioration related to [Plaintiff's] mental impairment.

*     *     *

[Plaintiff] testified that she worked as a receptionist at a retirement community for one week upon her relocation to Hemet. She reported that her daughters, siblings and ex-husband are providing the money for her to live on. She

18

stated that she stopped working due to stress, interruptions, and phone calls and just ran out of there.  [Plaintiff] noted that she has anxiety now, but usually is ["okay" - *see* A.R. 207] at home, but she cannot handle crowds or traffic.  She noted that anxiety and panic attacks are two different things with a panic attack being when you cannot breathe or when you feel like you are choking.  She testified that the last panic attack she had was when she left the job. . . .  [Plaintiff] reported that, if someone gave her a job, she would try to show up, but she does not know how long she would last (like the last time - one week as a receptionist).  [Plaintiff] stated that she walks the dog; gets the mail; watches the news; has no social life; does not go to movies; does not leave the house much; and visits her sisters (two doors down).  She reported that she did not drive herself to the hearing, but it is the farthest that she has been from Hemet in a long time.

In assessing [Plaintiff's] credibility, the Administrative Law Judge has utilized the criteria of 20 CFR 404.1529 and Social Security Ruling 96-7p which provides for the assessment of subjective symptomatology.  [Plaintiff] alleges that she experiences debilitating headaches, depression, anxiety and bladder and bowel problems.  Although [Plaintiff] has been on a long term medication regimen for anxiety/panic attacks, the regimen has been very successful in controlling symptomatology.  *By her own testimony and remarks to*

1  *examiners, [Plaintiff] reported that it had been years since*
2  *her last attack as she had her last one before she left her*
3  *job.  She noted that she was able to work for 25 years and*
4  *perform all of he duties despite her problems with anxiety.*
5  Moreover, she has never been hospitalized for emotional
6  problems.  When she begins to feel anxious, [Plaintiff] is
7  well-versed in stress management techniques which have proved
8  very successful in controlling her feelings. [Plaintiff]
9  reported that when she experiences morning depression, by
10 later in the day, it will resolve itself. . . .   The
11 Administrative Law Judge finds that [Plaintiff's] allegations
12 are not entirely credible and that they do not restrict her
13 ability to perform work-related activities (20 CFR 416.929 and
14 SSR 96-7p).

15

16 (A.R. 16-17, 19.)  In conclusion, the ALJ found that: "After a thorough
17 evaluation of the entire record including [Plaintiff's] allegations
18 regarding her symptoms and limitations, the undersigned finds [that] .
19 . . [Plaintiff] cannot work with the general public or in large crowds,
20 although she can work around other people.  She requires a relatively
21 low stress job."  (A.R. 17.)

22

23     In Plaintiff's Disability Report, she asserted that her alleged
24 impairments limit her ability to work, because they render her "unable
25 to function."  (A.R. 65.)  Plaintiff now contends that the ALJ failed to
26 provide clear and convincing reasons for disregarding her claimed
27 symptoms.  Plaintiff further maintains that the ALJ improperly failed to
28
                                    20

specify which allegations and/or symptoms were not credible.  (Joint Stip. at 9.)   In addition, Plaintiff argues that the ALJ failed to consider or apply the factors enumerated in Social Security Ruling 96-7p.  (Joint Stip. at 9.)

While Social Security Ruling 96-7p sets forth a number of factors for an ALJ to consider in assessing a claimant's credibility, it does not require an ALJ to specifically discuss and analyze each and every one of the factors set forth therein.  The failure to do so is not reversible error in and of itself.  In any event, despite Plaintiff's assertion that the ALJ did not explain his rejection of each claimed symptom and his basis for doing so, the ALJ's decision, as quoted above, shows that he painstakingly discussed the numerous components of Plaintiff's testimony at the hearing, including her various alleged symptoms, in reaching his conclusion as to her asserted mental limitations.

Specifically, as noted above, Plaintiff testified that she has no physical problem that precludes her from working.  (A.R. 207.)[6]  The ALJ further noted that Plaintiff's treatment of her claimed debilitating headaches has been "sketchy" (A.R. 19), which is an appropriate basis for disregarding any limitations flowing from such claimed impairment. *See, e.g.,* Flaten, 44 F.3d at 1464 (ALJ properly drew a negative

_____

[6]    The Court omitted from its lengthy quotation from the ALJ's decision his discussion of Plaintiff's initially-asserted bladder and bowel problems. As Plaintiff testified at the hearing, her former bowel problem was resolved, and her bladder problem was controllable if she watched her fluid intake.  (A.R. 208-09.)

inference regarding the claimant's pain based on the claimant's lack of medical care for her back problems for the years between her two back surgeries, where the record showed that she sought appropriate medical care for other medical symptoms during those years); <u>Fair</u>, 885 F.2d at 603 ("an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.") Significantly, Plaintiff fails to identify any actual symptoms or limitations flowing from her obesity or hypertension or any other physical impairments that the ALJ has improperly rejected.

Finally, it is significant that Plaintiff does not dispute any of the ALJ's findings with respect to her mental impairments, even though Plaintiff's claimed inability to work appears to be based on limitations flowing from her claimed mental impairment. Even if she did, however, the ALJ noted that while Plaintiff has experienced panic attacks for 30 years, she admittedly was able to perform her past work *despite* such limitations, as she reported to Dr. Khan. *See* <u>Osenbrook v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2000)(ALJ did not err in excluding the alleged residual effects of the claimant's gun shot from the hypothetical question where the record indicated that the claimant worked at his past employment as a mill manager for approximately six years after injuring his shoulder and left arm).

The ALJ provided clear and convincing reasons, based on substantial evidence, for his conclusion that Plaintiff's assertion that she is unable to work, because she is "unable to function" and/or her other

claimed symptoms, is not credible.  Accordingly, no reversible error has been shown based on Plaintiff's second issue.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence, and that neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2006.

/s/
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

23